BIGELOW et al. v. RKO RADIO
PICTURES, Inc., et al.

No. 9264.

Circuit Court of Appeals, Seventh Circuit.

June 20, 1947.

Rehearing Denied Aug. 7, 1947.

Carl Meyer, Miles G. Seeley, Bryson P. Burnham, Vincent O'Brien, John Merrill Baker, Edward R. Johnston, and Edmund D. Adcock, all of Chicago, Ill., for appellants.

Poppenhusen, Johnston, Thompson & Raymond and Adcock, Fink & Day, all of Chicago, Ill., for appellants Balaban & Katz Corporation and Paramount Pictures, Inc.

Mayer, Meyer, Austrian & Platt, for appellants RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corporation, and Loew's Incorporated.

Defrees, Fiske, O'Brien & Thomson, of Chicago, Ill., for appellants Warner Bros. Pictures, Inc., Warner Bros. Theatres, Inc., Warner Bros. Circuit Management Corporation, and Warner Bros. Pictures Distributing Corporation (formerly known as Vitagraph, Inc.).

Thomas C. McConnell, of Chicago, Ill., for appellees.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is the second appeal in this cause. On the first appeal, 150 F.2d 877, we found that the conspiracy alleged in the complaint was established by the evidence and was sufficient to support the jury's verdict, but we reversed on the question of damages. On certiorari to the Supreme Court, that Court affirmed the finding of a conspiracy but reversed us on the question of damages, holding that the plaintiffs had sufficiently and correctly proved the measure of damages, and affirmed a judgment for $360,000 damages, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652. The facts are set forth in these two opinions.

After the Supreme Court had reversed this Court and the cause had been remanded to the trial court, the plaintiffs filed a supplemental complaint alleging continuation of the conspiracy. In it they prayed for equitable relief and also additional damages for the period subsequent to the filing of the original complaint. The claim for additional damages is still pending in the District Court.

The plaintiffs' supplemental complaint alleged that the defendants were estopped by the verdict in the first damage trial from contesting any of the allegations of the original complaint or any of the allegations advanced by the plaintiffs during the trial of said issues. The defendants answered denying estoppel, and the estoppel issue joined was set separately for trial.

At the hearing the plaintiffs put in evidence, for the limited purpose of showing what had transpired during the trial and appeal of the damage issue, the complete printed record and the briefs filed, and also the opinions handed down in this Court and in the Supreme Court. This was the only evidence then heard by the trial judge sitting as a chancellor and it was expressly understood that the printed record, although it contained the testimony heard by the jury generally, was received only to permit the trial judge to determine to what extent inquiry by him into the merits was precluded by estoppel. The trial judge held with the plaintiffs that every allegation of the plaintiffs' original complaint had been decided

finally and conclusively in the plaintiffs' favor by the jury's verdict. In addition, the trial judge made a number of additional findings of fact which set forth the plaintiffs' conception of what they had proved at the trial. The District Court thereupon entered a permanent injunction as prayed for by the plaintiffs. From this judgment, the defendants have appealed.

By this appeal the defendants challenge the trial court's ruling that estoppel by verdict extends to every issue involved in prior litigation between the parties. They contend that as a matter of law estoppel by verdict extends only to matters expressly and necessarily decided in the prior litigation, with the result, as contended by the defendants, that the court's decree in its present form must fall. The defendants request this Court to modify the findings by confining such findings to the issues upon which the defendants actually are estopped, and to enter a decree on the findings as so modified.

The original complaint stated but one cause of action which, if proved, entitled the plaintiffs to two kinds of relief, namely, damages and an injunction. The same judge that presided in the trial of the damage action heard the plaintiffs' application for an injunction. One phase of this complaint was submitted to the jury which returned its verdict for damages, upon which judgment was entered and finally affirmed by the Supreme Court. The other phase was tried by the presiding judge as a chancellor, who has stated his findings of fact and conclusions of law and upon them entered the decree from which the defendants have appealed.

The defendants were found guilty of one conspiracy in restraint of trade in violation of the Sherman Act, 15 U.S.C.A. §§ 1, 2. The jury so found, and the District Court, this Court, and the Supreme Court upheld the finding of conspiracy. The conspiracy so operated that the defendants might hold a picture in the Loop for the benefit of their theaters there, at minimum admission prices to be charged, for such playing time as the defendants might agree upon. When the picture was through playing in the Loop, there was a clearance time of three weeks before it could play elsewhere in Chicago. The picture was then channeled in a series of release weeks through theaters owned and operated by the defendants, and finally in the tenth week after the Loop run, the plaintiffs were permitted to buy the picture in the first week of general release.

In other words, whatever income that picture was capable of producing was squeezed out of it for the benefit of the defendants, who operated under the unlawful conspiracy, before the defendants permitted the plaintiffs to buy; and notwithstanding the fact that the plaintiffs' theater had a superior location and equipment and was more attractive than the Maryland Theatre operated by one of the defendants, the defendants would not sell the plaintiffs a picture until the Maryland Theatre had played it. The defendants were able to set the run, clearance, system of release, and the minimum admission prices for every theater in the Chicago district. No theater could operate successfully in the Chicago district without the pictures which the defendants controlled.

Under this oppressive conspiracy, the defendants operated. This conspiracy has been outlawed unequivocally. The defendants have lost a lawsuit. By their unlawful conspiracy, they have been found to have damaged the plaintiffs in a very substantial sum. In one case where the Government had successfully prosecuted certain defendants before a jury for a violation of the Sherman Act, the Supreme Court said on an application for an injunction: "The defendants in this suit who had been there convicted could not require proof of what had been duly adjudged between the parties." Local 167 v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 399, 78 L.Ed. 804.

The trial court was not bound to hear any more evidence than the jury had heard and upon which evidence the jury had found the existence of the conspiracy and the very substantial damages to the plaintiffs. Upon that same evidence, the District Court could have based its decree after making proper findings. If the District Court took a narrow view of that ev-

idence, we would not feel bound to do likewise, because the entire record is before us. The record evidence if considered in its entirety supports the findings. It is only by looking through this restricted scope or view of the evidence that the findings are deemed insufficient. We decline the invitation to play hide and seek in the record in an effort to evaluate the District Court's findings, looking only through the scope of estoppel by verdict. The District Court had the entire record before it. If it chose to take a narrow view of the evidence, we are not bound to follow it where a consideration of all the evidence will support its findings without question.

We put to one side the refinements of argument, orally and in the briefs, as to the distinction between estoppel by verdict and estoppel by judgment, and look to all the evidence in this case that was submitted to the trial court on the first hearing, in order to determine whether there is evidence to sustain the findings that the court actually made. When so considered, there is an abundance of evidence to support the District Court's findings of fact. There can be no question of the defendants' guilt in maintaining the unlawful conspiracy alleged in the complaint. The evidence in the record supports the trial court's findings, and there was no error in denying the defendants' request for findings as the evidence did not compel the findings they requested.

■ The court, with this situation in mind, shaped its decree in a fashion to meet it. In this regard the court had a wide discretion. United States v. Crescent Amusement Co. et al., 323 U.S. 173, 185, 65 S.Ct. 254, 89 L.Ed. 160; Ethyl Gasoline Corporation et al. v. United States, 309 U.S. 436, 461, 60 S.Ct. 618, 84 L.Ed. 852; United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 725, 728, 64 S.Ct. 805, 88 L.Ed. 1024.

The decree was properly drawn to meet the acts committed under the conspiracy and threatened. The court was authorized to impose such further restraints as would prevent an evasion. All doubts were resolved in favor of the plaintiffs. Local 167

v. United States, supra, 291 U.S. at page 293, 299, 54 S.Ct. 396, 78 L.Ed. 804.

The defendant Balaban & Katz Corporation, although it appealed from the whole decree and not part of it as it might have done under Federal Rules of Civil Procedure, rule 73, 28 U.S.C.A. following section 723c, objects here specifically to certain portions of the decree. This defendant made no motion to modify the decree in the respects to which it now objects. Consequently, the District Court had no chance to rule on the contentions urged here for the first time. However, we have considered these contentions, and we find no merit in them except as hereinafter mentioned.

■ As to the double featuring, we found in the first appeal of this case that while the double featuring in and of itself was not illegal, when used to further the conspiracy which we found to be illegal, the double featuring became tainted with illegality. Bigelow v. R. K. O. Radio Pictures, 7 Cir., 150 F.2d 877, 885. Therefore, the District Court may very properly enjoin the use of double features where used with the intent and purpose and where such use has the effect of preventing the plaintiffs from obtaining pictures before the defendants have channeled them through the conspiratorial system. It is only the use of the double featuring within the bounds of the conspiracy that was enjoined. This is proper.

■ This defendant also complains that the decree should not enjoin the defendants from a first run in the Loop in excess of two weeks and a subsequent run in excess of one week without any waiting time, because their competitors are not so limited. The short and complete answer to this contention is that their competitors are not in the conspiracy. The provisions of the decree complained of were reasonably adapted to breaking up the conspiracy, a part of which was the method of release, and such provisions were therefore properly entered.

■ With reference to subparagraph (e) of Paragraph V of the decree, we agree with the defendants that there is no

finding to support it. The subparagraph reads as follows:

"(e) Preventing plaintiffs from buying a run of pictures one week in advance of the Maryland Theatre at a rental not to exceed a fair and reasonable film rental;"

Thus the plaintiffs seek by the decree a favored fixed position in the scheme which they have sought to destroy, and this on the ground not of the illegal conspiracy but on the ground that the court found they were at an economic disadvantage with the defendant Balaban & Katz Corporation, who owned and operated the Maryland Theatre, because of this defendant's bargaining power as the operator of a chain of theaters. The decree may very properly be used to destroy the conspiracy root, branch, and all its evil fruits, but it may not be used to redress the economic balance between the plaintiffs and the said defendant without a finding that that difference was related directly to the conspiracy. It has been the plaintiffs' contention, as we understand it, that no one has a vested right in a playing position. In this we agree with the plaintiffs. The plaintiffs have a right to compete for any playing position, but they have no right to be awarded and protected by decree in any certain position. If the plaintiffs find themselves at a disadvantage because the defendants are economically stronger inasmuch as they are a chain with large bargaining power, the plaintiffs may not, without any finding to support it, obtain a decree vesting them and protecting them in a privileged position ahead of the Maryland Theatre. This does not appear to us as using the decree to destroy the conspiracy, but rather to preserve the evil in the interest of the plaintiffs. The plaintiffs have been awarded a substantial judgment for damages. That should take care of the past injury. The decree which the court has entered, we think, rather effectively destroys the conspiracy and therefore leaves the future open to the plaintiffs to compete for the pictures at a reasonable price. This subparagraph of the decree is unsupported by any finding, and it will be eliminated.

With this modification, we find no basis for objection to the decree, and, as modified, the decree is affirmed.