**BIGELOW et al. v. RKO RADIO PICTURES, Inc.**

No. 9690.

United States Court of Appeals
Seventh Circuit.

Nov. 23, 1948.

784

Carl Meyer, Miles G. Seeley, Bryson P. Burnham and Mayer, Meyer, Austrian & Platt, all of Chicago, Ill., for appellant.

Thomas C. McConnell, of Chicago, Ill., for appellees.

Before SPARKS and MINTON, Circuit Judges, and SWYGERT, District Judge.

MINTON, Circuit Judge.

In one aspect or another of this case, the parties to this appeal have been here twice before. The previous opinions are reported in 7 Cir., 150 F.2d 877, reversed and the District Court affirmed in 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; and in 7 Cir., 162 F.2d 520, certiorari denied, 332 U.S. 817, 68 S.Ct. 158, 92 L.Ed. ——. In the latter case, known as the equity case, a decree was entered against the respondent-appellant. In the proceedings now before us, the respondent was charged with and found guilty of contempt of court for a violation of that decree. From a judgment for contempt, the respondent has appealed.

The pertinent part of Section VII of the decree in the equity case is as follows:

"VII. That defendants * * * their respective officers, directors, agents, servants, employees and all persons acting or claiming to act on behalf of them or any of them, be and they are enjoined from delaying the exhibition of any motion picture in the Chicago Exchange territory by permitting a run of such picture longer than two weeks on a first run *in a theatre owned; leased or operated by any defendant* * * * or by creating dead or waiting time between the conclusion of the first run of a picture *in any such theatre* in such territory and the next succeeding run of said picture * * *." (Italics supplied).

The respondent licensed the picture "Tycoon" to the Palace Theatre in the Chicago Exchange territory and refused to license it to anyone else for twenty-three days after its first run was concluded by the Palace Theatre. Dead or waiting time of twenty-three days was thus created by the respondent. This was a violation of the court's order if the respondent owned, leased, or operated the Palace Theatre. If the respondent did, as the District Court found, operate the Palace Theatre, it is conceded that the other elements necessary to a finding of contempt are present.

The original suit was for treble damages and an injunction against the respondent and others for a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The defendant there and respondent here, RKO Radio Pictures, Inc., was the only corporation of the RKO hierarchy of corporations that was a party to that suit. In his opening statement to the jury at the time of the damage suit, counsel for the respondent said:

"Here in Chicago they (respondent) do not have any theatres, except that RKO has two theatres in Downtown Chicago, the Palace Theatre and the Grand Theatre."

The District Manager of the respondent, testifying at that trial, said:

"We have our own theatres in the Loop.

"Q. You sold your first Loop release to your own theatres? A. The Palace Theatre.

* * * * * *

"A. All I know is that our Company that our District Manager for the Theatre

Department is operating the theatre * * *."

The Western Division salesman for the respondent testified on the original hearing that the Palace Theatre was owned by RKO.

When the original case was appealed to the Supreme Court, the record there induced Chief Justice Stone to state in his opinion [327 U.S. 251, 66 S.Ct. 575]: "Respondent RKO (the respondent here) also owns two large first-run theatres in the Chicago Loop." This statement was never challenged.

When the second appeal was here, counsel for the respondent said in his brief, "RKO operates two first-run theatres in the Loop," and further that, "The evidence showed that at the time of the jury trial two of the defendants, B&K and RKO, operated all of the so-called first run theatres in the Loop." The Palace was one of them. In the injunction suit, the respondent's counsel also stated that RKO owned the Palace Theatre.

The branch manager of the respondent's Chicago office testified on the original hearing:

"We don't sell the Balaban & Katz theatres downtown. We have our own theatres.

"Q. All right. Where do you sell them first? A. We sell them to the Palace and Grand Theatres; that is RKO theatres.

*      *      *      *      *      *

"Q. How many first run houses are there in the City of Chicago? A. Well, we have the Palace, the RKO Palace, and then there is the RKO Grand, to whom we sell our products first run.          •

*      *      *      *      *      *

"Q. Well, the Palace and Grand are theatres which are owned by your company? A. That is right, sir."

In the contempt proceedings he testified as follows:

"I do not know who the operator of those theatres is.

*      *      *      *      *      *

"Although I do not know who operates the RKO Palace and Grand Theatres, I do know that some company in the group of RKO companies operates these theatres. I do not know the name of the individual corporation, but I know it as RKO Theatres, Incorporated. I know nothing about the corporate relationship between that company and RKO Radio Pictures, Inc."

At the contempt hearing, it was stipulated that the respondent is a wholly-owned subsidiary of Radio-Keith-Orpheum Corporation; that another wholly-owned subsidiary of Radio-Keith-Orpheum Corporation, namely, RKO Theatres, Inc., owns all the stock of the Chicago Orpheum Company, and that the Chicago Orpheum Company leases the Palace Theatre from the Bismarck Hotel Company. The sum of this part of the stipulation is that RKO Radio Pictures, Inc. did not own or lease the Palace Theatre. The lease was to the Chicago Orpheum Company from the Bismarck Hotel Company. Operation of a theatre would seem to require actual possession thereof as well as exhibition of pictures to the public and collection therefor. Whether the respondent had a hand in these activities, that is, whether it operated the theatre, does not appear.

It was also stipulated who the officers of these corporations were. From an examination of this much of the stipulation, it is apparent that the officers and directors of these corporations interlocked to a very large extent. The control through stock ownership and interlocking officers and directors of these affiliates is in the hands of the same individuals.

From the above evidence the District Court found that the respondent operated the Palace Theatre and concluded that its operations were in violation of the District Court's decree.

It seems to us that it comes a little late for the respondent to say to the District Court that it did not operate the Palace Theatre. The admissions of record of counsel for the respondent and of witnesses in responsible positions with the respondent made no distinction between the corporate entities of the RKO hierarchy. The case was tried with only RKO Radio Pictures, Inc., the respondent here, as the only defendant from the corporate group. The court at all times understood that the re-

786

spondent alone was referred to by the witnesses and counsel when they referred to RKO; and the case was tried upon the theory that the respondent was the only RKO corporation involved, and that the respondent was operating the Palace Theatre.

The respondent now for the first time drags from the closet the bare bone skeleton of an elaborate corporate structure to show to the court that not the respondent but another wholly-owned subsidiary of the corporation, of which the respondent is also a wholly-owned subsidiary, operates the Palace Theatre, notwithstanding common control of the entire corporate pyramid through stock ownership and interlocking officers and directorates. The contention that under such circumstances the right hand does not know what the left hand is doing is a bit specious. The District Court, which was thoroughly familiar with the respondent's appearance in the other proceedings, very properly looked past this ghost-like corporate figure, and, viewing the matter realistically, recognized that after all one and the same group was in control and operation of the Palace Theatre.

The respondent was the old familiar face the court had in mind when it drafted its decree in which it intended to cover the respondent as an operator of the Palace Theatre. Just as the court believed when it entered its decree, "It would be to subordinate reality to legal form" to hold that the respondent did not operate the Palace Theatre. See United States v. Reading Co., 253 U.S. 26, 61, 40 S.Ct. 425, 64 L.Ed. 760.

It was the District Court's right and duty to protect its decree and to attend to its enforcement against the parties in the guise in which they appeared to contest the entry of the decree. Relying, as the court did, upon the testimony and judicial admissions made in the original case which reflected the realities of that case, rather than the fictional corporate set-up produced for the first time in the contempt proceedings which at best proved merely that the defendant did not own or lease the Palace Theatre, the court's finding that the respondent operated the Palace Theatre was not clearly erroneous. The judgment of the District Court is affirmed.