### BIGELOW et al. v. BALABAN & KATZ CORP.

### No. 10406.

United States Court of Appeals
Seventh Circuit.

Nov. 24, 1952.

Jacob I. Grossman, Alfred B. Teton, and Grant G. Guthrie, Chicago, Ill., Froelich, Grossman, Teton & Tabin, Chicago, for petitioner-appellant, Balaban & Katz Corp.

Thomas C. McConnell, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from the denial of a petition filed by Balaban & Katz Corporation, one of a number of defendants in a conspiracy-antitrust suit, to relax certain injunctive provisions of the decree on the ground that the conditions in the industry have been so materially changed since its entry that the specific restraints are no longer necessary and, being unduly burdensome, should be removed.

The decree in question was entered on October 16, 1946, in an antitrust suit brought by the owners of the Jackson Park Theatre, an independent motion picture theatre, against a group of defendants, including petitioner, consisting of the five major producers and distributors of motion pictures in the United States and a

number of their exhibitor-subsidiaries owning theatres in the Chicago area. The principal target of the suit was the so-called Chicago system of release which, because of the conspiracy between all these defendants, operated effectively to channel motion picture films through a succession of theatres owned or operated by one of themselves, thus preventing exhibition by independent theatres, including Jackson Park Theatre, until practically all exhibition value had been squeezed out.[1]

The decree declared that the conspiracy to restrain and monopolize interstate trade in motion pictures generally, described as the Chicago system of release, was illegal and a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and it perpetually enjoined all defendants from carrying out such conspiracy or any similar conspiracy against the business of the Jackson Park Theatre. In addition, it imposed specific restraints now described by petitioner as preventing defendants from restricting the distribution of films on the South Side of Chicago to the defendants; preventing or delaying the Jackson Park Theatre from securing films until the exhibition value thereof had been lost; granting the defendants' theatres on the South Side arbitrary clearance over the Jackson Park Theatre; fixing admission prices in licensing agreements with the Jackson Park Theatre; the use of chain buying power; delaying the exhibition of motion pictures in Chicago by permitting first runs of longer than two weeks and subsequent runs of longer than one week, or "dead or waiting time" in any theatre owned or operated by any defendant, or by permitting move-overs from one defendant's theatre to another defendant's theatre, or by any uniform plan of clearance for the purpose of accomplishing any of the acts otherwise enjoined; from making or performing contracts in conflict therewith; from playing double features with the intent or effect of preventing the Jackson Park Theatre from obtaining motion pictures which had not been played by competing theatres owned or operated by the defendants.

The present petition, filed June 12, 1950, asks that the decree be modified (a) to eliminate the Loop first run two-week restrictions entirely, (b) to eliminate the clearance restriction to the extent of providing for a "reasonable interval of time between the conclusion of first runs and the beginning of subsequent exhibitions"; (c) to permit double features unconditionally on Loop first runs, and (d) to relieve petitioner of the burden of affirmatively enforcing compliance with the double featuring portion of the decree in its south side theatres.

In support of its petition, petitioner introduced evidence, oral and documentary, intended to prove such material changes in conditions in the industry both locally and nationally after entry of the decree, as to compel a modification thereof.

The first change to which it pointed was that in the relationship between the parties resulting from a consent decree entered in a New York Expediting Court which required divorcement of the producing and distributing from the exhibiting branches of the industry. The second change was in the system of distribution and exhibition in the city of Chicago. Petitioner asserted that it no longer had a monopoly of Loop first run theatres, and that competition had been fully established both in the Loop and in outlying areas as a result of the adoption by all distributors of competitive bidding systems in place of the old licensing system.

The trial judge, who has heard all the proceedings in this protracted litigation, was not convinced by the showing made in support of the petition and therefore denied it *in toto*. In denying it he referred to the fact that the Chicago system of release included various features, some of which, notably extended Loop runs, were not illegal or criminal in themselves. However,

---

1. The facts have been fully stated in the opinions of this court on earlier appeals in the same proceedings. 150 F.2d 877, reversed on the question of damages, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; 162 F.2d 520; 170 F.2d 783; Bigelow v. Twentieth Century Fox, 183 F.2d 60. See also Bigelow v. R. K. O. Pictures, D. C., 78 F.Supp. 250.

he thought they all added up to an illegal and discriminatory system, two of the basic evils of which were unlimited runs and clearance, and that he should not be asked to change those. He apparently was impressed by the fact that a similar suit brought by the owner of an independent theatre in Milwaukee against all the same defendants as those involved in these proceedings with the exception of petitioner had disclosed a continuation outside Chicago of the same practices condemned and enjoined in this suit after entry of the decree herein, thus necessitating the entry of a similar decree four years after the one here sought to be modified on the ground of change in conditions. See Milwaukee Towne Corp. v. Loew's Inc., 7 Cir., 190 F.2d 561.

■ As we understand the positions of the two parties on appeal, appellees contend that the trial court had no power to modify the decree for the reason that the changes relied upon to justify modification were the very results intended to be accomplished by the decree and that to modify it would simply be to restore the conditions intended to be eliminated. Appellant's complaint here is, in effect, that the trial judge adopted this view, refusing to consider the issue of changed conditions and apparently closing the door on any changes in the decree except as they might be negotiated between the parties themselves. Appellant contends that the changes to which it points have resulted from factors entirely apart from the decree, and that the removal of the specific restraints it finds unduly burdensome would in no way restore the fundamental evil intended to be destroyed. Emphasis is thus placed by both parties on the matter of change in conditions for the reason that under the doctrine of United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, power to modify an injunction turns upon the issue whether such modification is in adaptation to changed conditions not readily foreseeable at the time the decree was entered.

With respect to the first change, which appellant asserts results from the divorcement of the production-distribution and the exhibition branches of Paramount Pictures,

Inc., there is no question but that the consent decree entered March 3, 1949, was intended to provide for complete separation of corporate management and operation of the two new corporations to be created out of the old Paramount Pictures, Inc., within one year after entry of the decree, and separation of stock ownership according to the plan of reorganization prescribed.

■ We think appellant is correct in saying that this is a change which could not have been contemplated at the time of the entry of the decree since the Expediting Court had rejected the plea of the Department of Justice for divestiture in its original decree, entered June 11, 1946, United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, 353. However, it does not follow that it is such a change as to require immediate relaxation of restrictions. No doubt the separation of interests required by the Paramount decree, together with the divestiture required by a similar consent decree against RKO, and by the final decree of the Expediting Court entered against all other defendants February 8, 1950, to be completed within three years thereafter, will eventually be effective to eradicate all illegal concert of action between the production-distribution and the exhibition branches of the industry. And the responsibility for policing the industry to make sure that the provisions of the decrees are faithfully carried out will fall where we think it properly belongs—under the control of the Department of Justice in the interest of all rather than as in the Chicago situation where the owners of one independent theatre act in their own interest to maintain conditions of free competition which only incidentally aid other independent theatres who are equally interested but who have not prosecuted and won protracted lawsuits. We think that compulsory divestiture did not result in such immediate change in relationships between distributors and exhibitors as to require immediate relaxation of restraints in an industry whose members have been described as having "shown such a marked proclivity for unlawful conduct * * *." United States v. Paramount Pictures, Inc.,

334 U.S. 131, 148, 68 S.Ct. 915, 925, 92 L. Ed. 1260.

The second alleged change in conditions related to the method of distribution of films by competitive bidding rather than by licensing. While such a method was not specifically required by the decree, certainly some change had to be made from the old system of franchises, formula deals and block booking, which system was declared illegal in this proceeding as well as in the New York suit. To effect that required change, the producer-distributors developed their various zoning-competitive bidding systems. We think this was not of itself a sufficient change to require the elimination of the specific restrictions on extended runs and clearance at this time. That competitive bidding is not the complete answer to the problems of the independent theatre, see United States v. Paramount Pictures, Inc., 334 U.S. 131, 161–166, 68 S.Ct. 915, 92 L.Ed. 1260. The decrees requiring complete divestiture followed reversal of the Expediting Court's original decree providing for compulsory competitive bidding under the supervision of the court, which the Supreme Court found unwarranted and dangerous. All of this, we think, points up the necessity for continuing the present restrictions for the time being until relationships between the producer-distributors and the exhibitors, both newly independent and originally independent, have had an opportunity to develop. As we read the record here and our earlier opinions, we think it was not the intention of the court to impose these particular restrictions in perpetuity. But we think it is no undue hardship on this defendant-conspirator to continue them for awhile longer. It may be that a longer experience in operating under the decree in this proceeding as well as under those of the Expediting Court will reveal that they are no longer necessary in order to maintain a healthy condition of competition between this independent, Jackson Park Theatre, and the theatres owned by the corporate successor to petitioner's parent, the old Paramount. It will then be time enough to say that restrictions against methods of doing business which are not illegal *per se* shall be eliminated.

We find no impropriety in the denial of the petition for modification on the basis of the showing here made. However, if the trial court's decision is to be construed as meaning that there can never be any modification of the provisions of the injunctive decree, we think it goes too far. We cannot agree with the extreme position stated by counsel for Jackson Park Theatre on argument, that the decree provides for perpetuity, and that only the sale of the theatre would constitute such a change in condition as might render the decree inapplicable. It appears from the argument of counsel for appellees that while he insists that he represents only the owners of the Jackson Park Theatre, nevertheless he emphasizes the beneficent effects of the decree on other independents, stressing the improvement of the condition of competition in the Loop as well as in the outlying areas —thus indicating that he does conceive his position as one of policeman for the industry. This also appears to have been the view of the Expediting Court which took cognizance of the Chicago Bigelow decree. The Paramount consent decree provided that in the event of the modification or vacating of that decree and the worsening of competitive conditions thereafter to the detriment of independent exhibitors in outlying Chicago, upon a showing by the Attorney General to the Expediting Court, that court might order such relief as it deemed proper in order to create proper competitive conditions in outlying Chicago. Thus it appears that the court and the parties to that suit considered that the enforcement of the Bigelow decree was to be relied upon to establish and maintain a system of free enterprise in the Chicago area.

As we have previously indicated, it appears to us to be an unhealthy condition for one independent theatre to be, in effect, policing the industry for this entire area. However, for the time being, its own activities in its own self-interest undoubtedly create a healthier atmosphere of free competition for all independents in the area, a result also intended to be accomplished by the Expediting Court's decrees. We think it is still entitled to the protection of the

specific restrictions against extended runs and unlimited clearance for its own benefit and, incidentally, for the benefit of other independents not formally represented in these proceedings.

In three respects we think appellant is entitled to some relief. It tells us that the decree has been construed to prevent any double featuring in its Loop first run theatres without appellees' consent. Paragraph IX of the decree perpetually enjoined the practice of a policy of playing double features in defendants' theatres in the Chicago Exchange territory for the purpose or with the intent or effect of preventing Jackson Park Theatre from obtaining pictures which had not theretofore been played by competing theatres owned or operated by defendants. We find nothing in this record to indicate that the playing of double features in Loop first run theatres would in any way tend to decrease the number of films released for exhibition in outlying theatres. Instead we think the record establishes that such double featuring would increase the number for release, the very purpose intended to be accomplished. Appellant's request for unconditional double featuring in its Loop first run theatres should therefore be granted. Likewise, we think it should be relieved of the burden of affirmatively enforcing compliance with the double featuring restriction in south side theatres since that is primarily the responsibility of its distributor-codefendants. Appellant complains that its own attempts to ensure compliance present an unnecessary and increasingly burdensome bookkeeping problem. We see no reason why Jackson Park Theatre should not look to the distributors for compliance.

It also appears to us that appellant is entitled to relief in the matter of "dead or waiting time" insofar as such relief was permitted by the Milwaukee Towne decree and was consented to by counsel in the hearing below. That relief was limited to the situation where a film which had been licensed for a two-weeks run had closed before the expiration of the two weeks, in which case up to ten days of dead or waiting time was permitted before exhibition in

subsequent run theatres. The same relief should be allowed here.

The decree of the District Court will be modified in accordance with this opinion, and as modified it is

Affirmed.