**BIGELOW v. RKO RADIO PIC-
TURES, Inc., et al.**

**No. 10777.**

United States Court of Appeals
Seventh Circuit.

June 23, 1953.

George L. Siegel and Le Roy R. Krein, Chicago, Ill., Edward C. Raftery, New York City, for appellant.

Thomas C. McConnell, James O. Smith, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

On July 28, 1942, plaintiffs, as the owners of the Jackson Park Theatre, located on Chicago's south side, commenced an antitrust suit under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, against five major producers and distributors of motion pictures, and a number of their exhibitor-subsidiaries owning theatres in the Chicago area. Among the defendants was RKO

Radio Pictures, Inc., a distributor of motion pictures. Plaintiffs prevailed in the litigation and a decree was entered on October 16, 1946, granting injunctive relief and imposing certain restrictions upon theatres "owned, leased or operated by any defendant," including a prohibition against the first run of a picture longer than two weeks in a theatre owned, leased or operated by any defendant. This court has heretofore considered and passed upon various aspects of the decree.[1]

Winston Theatre Corporation (hereinafter called Winston) was organized in March, 1943, and on May 26, 1943, commenced operating the RKO Grand Theatre located in the Chicago Loop. Prior to January 1, 1951, Winston was a wholly owned subsidiary of RKO Theatres, Inc., which in turn was a wholly owned subsidiary of Radio-Keith-Orpheum Corporation.

In a petition filed in the district court Winston asked that the court declare that RKO Grand Theatre operated by it is not "a theatre owned, leased or operated by any defendant" within the meaning of those words in Paragraph VII of the decree, and that said theatre is not "owned, operated or controlled by defendant exhibitors" or "owned or operated by the defendants or any of them" within the meaning of those words in Paragraph IX of said decree, and that said decree does not operate against petitioner and the Grand Theatre. The district court dismissed the petition.

Winston points out that it operates only one theatre, the Grand, which is one of eight first run theatres in the Chicago Loop; that the seating capacity of the Grand is 1,175; that the distributors of films will not permit the Grand to bid for runs of more than two weeks because claim has been made that the 1946 decree prevents them from so doing. Winston claims that it cannot compete with the Balaban & Katz theatres, which are also limited to runs of two weeks, because their larger seating capacity permits them to outbid the Grand, and that it cannot compete with other theatres which are not limited to the two week runs, because by that very fact they are able to bid higher for pictures than the Grand. Winston asserts that during 1951 when the Grand played a number of pictures on extended runs, pursuant to a court approved stipulation, it showed a small net profit of approximately $12,000 but for the period of approximately six months from January 1, 1952, to June 28, 1952, when it was unable to obtain pictures for runs of over two weeks, its business loss was $108,000. Winston asserts that this loss was due to the inability of the Grand Theatre to compete for better pictures because of the two-week limitation, and that if this condition continues, it will be forced out of business.

On the hearing Winston relied upon a consent decree entered into in an anti-trust suit brought by the United States Government in the United States District Court for the Southern District of New York against major producers and distributors, charging a violation of the federal anti-trust laws. Radio-Keith-Orpheum Corporation, RKO Radio Pictures, Inc., and three subsidiaries were among the defendants named in that action. United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323; Id., D.C., 70 F.Supp. 53; Id., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. In that suit (which will hereinafter be referred to as the Paramount case) a consent decree was entered on November 8, 1948, as to Radio-Keith-Orpheum Corporation. The decree recited that RKO defendants proposed to put a plan of reorganization in effect which would have as its object and effect the divorcement of RKO's production-distribution assets from RKO theatre assets. The following provision is contained in that decree: "On and after January 1, 1951, the New Theatre Company and the New Picture Company shall be operated wholly independently of one another and shall have no common directors, officers, agents or employees. Each of them shall thereafter be enjoined from attempting to control or influence the business or

1. 162 F.2d 520; 170 F.2d 783; Bigelow v. Twentieth Century Fox Film Corp., 183 F.2d 60; Bigelow v. Balaban & Katz Corp., 199 F.2d 794; Bigelow v. Loew's, Inc., 201 F.2d 25.

operating policies of the other by any means whatsoever." Evidence was introduced to prove that thereafter all assets relating to theatre operations were transferred to RKO Theatres Corporation, and all assets relating to the production and distribution of motion pictures were transferred to the new picture company. Winston is wholly owned by RKO-Keith-Orpheum Theatres, Inc., which is a wholly owned subsidiary of RKO Theatres Corporation, the new theatre company. The petition alleges and proof was made to show that the divorcement of theatre operations from the production-distribution operations became effective January 1, 1951. Winston claims that since that date the RKO Theatres Corporation does not have common directors, officers, agents or employees with the RKO Radio Pictures, Inc., and that the theatre corporation does not own any stock in the picture company, and vice versa.

In its findings the district court ignored the evidence that as of January 1, 1951, there was a divorcement of theatre operations from production-distribution operations, which prior to that date were carried on by affiliated companies. The court adopted Finding 6 proposed by the plaintiffs, to wit, "That the evidence in this case shows no changes in the situation so far as Winston Theatre Corporation is concerned which in any manner justify this Court in modifying its decree heretofore entered herein, nor does the present record show anything other or different than was shown at the time of the original hearing herein, in which it was disclosed that Winston Theatre Corporation was in active concert with and in conspiracy with the defendants herein in the maintenance and carrying on of the conspiracy evidenced by the Chicago system of release."

The finding that there has been no change in the situation so far as Winston is concerned is clearly incorrect, unless in fact the terms of the consent decree in the Paramount case are not being carried out in good faith, but the court did not include a finding on this point. Winston was not organized until over a year after the case at bar had been commenced. Prior to January 1, 1951, it was the wholly owned subsidiary of RKO Theatres, Inc., which in turn was owned by Radio-Keith-Orpheum Corporation which latter company has now been dissolved. The new theatre corporation and the new picture company do not have common directors or officers and neither holds stock in the other. By the express terms of the consent decree each is required to operate wholly independently of the other and is enjoined from attempting to control or influence the business or operating policies of the other by any means whatsoever.

We cannot assume that the decree of the New York court is not being carried out in good faith. Yet the plaintiffs here argue, " * * * the so-called divorcement pursuant to the *Paramount* decree is largely window-dressing"; further that "the mere substitution of two holding companies where one stood before is no change of any substance." Plaintiff argues that Howard Hughes, the largest single stockholder in the picture company, is still the largest stockholder in the theatre company.

The proof shows that there are 15,000 stockholders of record of the theatre company. Pursuant to the consent decree, Howard Hughes was required to and did deposit his shares of the new theatre company with the Irving Trust Company, as trustee under a voting trust, under the terms of which the trustee possesses all the voting rights, reserving to Hughes only the privilege of receiving any dividends that may be declared. The trust company also has the power to sell the stock.

We think that the effect of the decree in the Paramount case cannot be ignored, and should be given full consideration by the district court; also, if the claim is pressed that the divorcement pursuant to the decree is merely window-dressing, or not being carried out in good faith, then evidence should be received on that subject; and in any event the court should make a specific finding on that point. Winston did request the court to make findings giving effect to the divorcement proceedings in the Paramount case. However, we are unable to ascertain from the record in its present form whether the trial court believed that the proceedings in the Paramount case had

**234**

no possible effect in the case at bar, or whether it agreed with the argument made here by plaintiffs that the decree was not being carried out in good faith.

At the time of the decision below, the district court did not have the benefit of the opinion of this court in Bigelow v. Balaban & Katz Corp., 199 F.2d 794, and may have felt that relief could not be granted to Winston, irrespective of any divorcement of the theatre operations and the producing-distributing operations of Radio-Keith-Orpheum Corporation. However, in the Bigelow v. Balaban & Katz case, 199 F.2d at page 796, this court said, with respect to the divorcement of the production-distribution and the exhibiting branches of Paramount, "We think appellant is correct in saying that this is a change which could not have been contemplated at the time of the entry of the decree * * *." We further indicated that restrictions of the decree were not necessarily to remain in perpetuity, and said, 199 F.2d at page 797, "However, if the trial court's decision is to be construed as meaning that there can never be any modification of the provisions of the injunctive decree, we think it goes too far. We cannot agree with the extreme position stated by counsel for Jackson Park Theatre on argument, that the decree provides for perpetuity, and that only the sale of the theatre would constitute such a change in condition as might render the decree inapplicable."

Plaintiff makes the same argument here, that only a sale of the Grand Theatre to a stranger to the litigation who was not in any way previously connected with the defendant can free that theatre from the restrictions of the decree. But we think that if a complete divorcement has in fact been had of the business of operating theatres from the business of producing and distributing motion pictures, and the decree of the New York court is being carried out in entire good faith, and the new picture company does not control or influence the operating policies of the theatre company or Winston, the district court could properly decree that the Grand Theatre is not a theatre owned, leased or operated by a defendant. In view of the decision of this court in Bigelow v. Balaban & Katz Corp., supra, which was subsequent to the findings and order of dismissal of the district court herein, and in order to permit the court to make additional findings on the issue hereinbefore indicated, this cause will be remanded. The court should be free to make such findings on the record heretofore made, or, in its discretion, to permit additional testimony to be taken on that issue.

Cause reversed and remanded for additional findings of fact and conclusions of law, and a decree in accordance therewith.