## LOCAL 167, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, ETC., ET AL. v. UNITED STATES.

No. 6.. Argued January 17, 18, 1934.—Decided February 5, 1934.

294

Mr. *Samuel H. Kaufman,* with whom Mr. *Nathan D. Perlman* was on the brief, for appellants.

*Assistant Attorney General Stephens,* with whom *Solicitor General Biggs* and Messrs. *Charles H. Weston* and *Walter L. Rice* were on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The decree appealed from is an injunction against a conspiracy commenced in May, 1927, by the appellants and others to restrain and monopolize interstate commerce in live and freshly dressed poultry in violation of §§ 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C., §§ 1, 2. Most of the issues were litigated before the same court in a criminal prosecution commenced August 28, 1928. Sixty-five of the defendants in this case were there convicted November 21, 1929. The Circuit Court of Appeals affirmed.*

This suit was commenced February 7, 1930. The defendants are the Greater New York Live Poultry Chamber of Commerce, Local 167 of the International Brotherhood of Teamsters, Chauffeurs, Jobbers and Stablemen of America, the Official Orthodox Poultry Slaughterers of America, Inc., called the shochtim union, and 100 individuals, 75 of whom are wholesalers, hereafter called marketmen. The Chamber is an association of marketmen. The members of Local 167 haul live poultry. Shochtim are the only persons qualified to slaughter poultry in accordance with Jewish dietary laws; they are employed by the marketmen.

---

\* 47 F. (2d) 156. Certiorari denied, 283 U.S. 837.

Live poultry for sale and consumption in the New York metropolitan area continuously moves in great volume from points in distant States to commission men, called receivers, at railroad terminals in Manhattan and Jersey City. The receivers sell to marketmen. The larger part of the poultry is delivered directly from the cars; the remainder from stands maintained by the receivers. The purchasers have the coops loaded on trucks and hauled to their places of business where, without avoidable delay, they sell, slaughter and deliver to retailers. Marketmen organized the Chamber of Commerce and allocated retailers among themselves and agreed to and did increase prices. The Chamber, through a levy of a cent a pound upon poultry sold by the marketmen, raised money—more than $1,000,000 in the first year—to pay for enforcement activities. To accomplish various purposes of the conspiracy, the conspirators hired men to obstruct the business of dealers who resisted. They spied on wholesalers and retailers and by violence and other forms of intimidation prevented them from freely purchasing live poultry. And, for like purpose and to extort money for themselves and their associates, members of Local 167 refused to handle poultry for recalcitrant marketmen, and members of the shochtim union refused to slaughter.

The petition contains allegations identical with those of the indictment as to the conspiracy and the means used to carry it into effect. The convicted defendants denied all the material allegations. On the Government's motion the court struck out as sham their denials of the conspiracy prior to the commencement of the criminal prosecution but let stand their denials of its continuance after that date. Decree was entered against 52 defendants by consent. Among the 49 resisting were the Chamber of Commerce, Local 167, the shochtim union and 29 individuals who had been convicted. At the conclusion of the evidence the trial judge in an oral opinion stated that, except as to two individual defendants, every mate-

rial allegation had been proved. In accordance with that ruling the court later made findings of fact, stated its conclusions of law and entered a comprehensive decree. Only Local 167, the shochtim union and 14 individuals, members of the one or the other union, have appealed.

In their brief and oral argument appellants contend: (1) there is no proof that they intended to restrain or did interfere with interstate commerce; (2) if ever concerned in the conspiracy, they voluntarily abandoned it before this suit was commenced, and there is no probability of resumption; (3) there is no credible evidence against Weiner, Rosenman and Markman; (4) the court erred in striking out as sham the denials of convicted defendants; (5) the decree should be modified by eliminating a paragraph that enjoins them in respect of both interstate and intrastate commerce and by limiting the injunction to interstate commerce.

The assignment of errors includes more than 250 specifications and occupies more than 35 pages of the record. While it is possible to find among them bases for the five points indicated, they contain so much that is irrelevant that they tend to confuse rather than to define the issues to be presented. They do not appropriately serve the convenience of the appellee or of the court. *Phillips & Colby Const. Co. v. Seymour,* 91 U.S. 646, 648. *Central Vermont Ry. v. White,* 238 U.S. 507, 508. *Chesapeake & Del. Canal Co. v. United States,* 250 U.S. 123, 124. *Seaboard Air Line Ry. v. Watson,* 287 U.S. 86, 91. In view of the omission of appellee to object and the lack of precedent definitely in point we refrain from dismissing the appeal for failure substantially to comply with the statute and our rule in respect of the assignment of errors. 28 U.S.C., § 862. Rule 9. But what is here said is to be understood as an announcement that in the future a failure of that sort may be taken as sufficient ground for dismissal.

Appellants' contention that there is no proof that they intended to restrain or did interfere with interstate commerce has no merit.

The evidence shows that they and other defendants conspired to burden the free movement of live poultry into the metropolitan area. It may be assumed that some time after delivery of carload lots by interstate carriers to the receivers the movement of the poultry ceases to be interstate commerce. *Public Utilities Comm'n* v. *Landon,* 249 U.S. 236, 245. *Missouri* v. *Kansas Gas Co.,* 265 U.S. 298, 309. *East Ohio Gas Co.* v. *Tax Comm'n,* 283 U.S. 465, 470–471. But we need not decide when interstate commerce ends and that which is intrastate begins. The control of the handling, the sales and the prices at the place of origin before the interstate journey begins or in the State of destination where the interstate movement ends may operate directly to restrain and monopolize interstate commerce. *United States* v. *Brims,* 272 U.S. 549. *Coronado Coal Co.* v. *United Mine Workers,* 268 U.S. 295, 310. *United States* v. *Swift & Co.,* 122 Fed. 529, 532–533. Cf. *Swift & Co.* v. *United States,* 196 U.S. 375, 398. The Sherman Act denounces every conspiracy in restraint of trade including those that are to be carried on by acts constituting intrastate transactions. *Bedford Co.* v. *Stone Cutters Assn.,* 274 U.S. 37, 46. *Loewe* v. *Lawlor,* 208 U.S. 274, 301. The interference by appellants and others with the unloading, the transportation, the sales by marketmen to retailers, the prices charged and the amount of profits exacted operates substantially and directly to restrain and burden the untrammeled shipment and movement of the poultry while unquestionably it is in interstate commerce.

Appellants' contention that the proof shows that they abandoned the conspiracy before the commencement of this suit cannot be sustained.

The conspiracy was not for a temporary purpose but to dominate a great and permanent business. It was

highly organized and maintained by the levy, collection and expenditure of enormous sums. In the absence of definite proof to that effect, abandonment will not be presumed. *Hyde* v. *United States,* 225 U.S. 347, 369. *Nyquist* v. *United States,* 2 F. (2d) 504, 505. The Government introduced substantial evidence which uncontradicted and unexplained tends to show that the conspiracy and appellants' participation continued until the filing of the amended complaint. They were present in court but failed to testify in their own defense. It justly may be inferred that they were unable to show that they had abandoned the conspiracy and did not intend further to participate in it. Under the circumstances of this case their silence rightly is to be deemed strong confirmation of the charges brought against them. *Mammoth Oil Co.* v. *United States,* 275 U.S. 13, 52. *Bilokumsky* v. *Tod,* 263 U.S. 149, 154.

There was evidence tending to show that Weiner, Rosenman and Markman were connected with the conspiracy. All were present but none testified. As on cross-examination full disclosure would have been called for, failure to take the witness stand strongly suggests that they could not give an account of their conduct that would be consistent with the denial interposed by answer or tend to repel what had been shown against them. The district court rightly held them to be parties to the conspiracy.

The judgment in the criminal case conclusively established in favor of the United States and against those who were found guilty that within the period covered by the indictment the latter were parties to the conspiracy charged. The complaint in this suit includes the allegations on which that prosecution was based. The defendants in this suit who had been there convicted could not require proof of what had been duly adjudged between the parties. And, to the extent that the answers attempted to deny participation of convicted defendants in the conspiracy of which they had been found guilty,

they are false and sham and the district court rightly so treated them. *Oklahoma* v. *Texas,* 256 U.S. 70, 85. Cf. *Coffey* v. *United States,* 116 U.S. 436, 442. *Stone* v. *United States,* 167 U.S. 178, 184.

Appellants seek elimination of the provision of the decree that enjoins them from using any of the offices or positions in Local 167 or the shochtim union " for the purpose of coercing marketmen to buy poultry, poultry feed, or other commodities necessary to the poultry business from particular sellers thereof." The United States is entitled to effective relief. To that end the decree should enjoin acts of the sort that are shown by the evidence to have been done or threatened in furtherance of the conspiracy. It should be broad enough to prevent evasion. In framing its provisions doubts should be resolved in favor of the Government and against the conspirators. *Warner & Co.* v. *Lilly & Co.,* 265 U.S. 526, 532. The evidence shows that delegates of the unions coerced marketmen to use coops of a company that had or sought to secure a monopoly of such facilities and charged excessive rentals for them. The lack of specific evidence that coercion has been practiced or is threatened in respect of every detail or commodity is no adequate ground for striking out the clause or for limiting it to a mere specification of the coops. Having been shown guilty of coercion in respect of the coops in which poultry is kept and fed, appellants may not complain if the injunction binds generally as to related commodities including feed and the like. When regard is had to the evidence disclosing the numerous purposes of the conspiracy and the acts of coercion customarily employed by defendants, it is plain that the clause referred to cannot be condemned as unnecessary or without warrant.

And, maintaining that interstate commerce ended with the sales by receivers to marketmen, appellants insist that the injunction should only prevent acts that restrain commerce up to that point. But intrastate acts will be en-

joined whenever necessary or appropriate for the protection of interstate commerce against any restraint denounced by the Act. *Bedford Co.* v. *Stone Cutters Assn., ubi supra. Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 438. In this case the evidence fully sustains the decree.

*Affirmed.*