## NATIONAL LABOR RELATIONS BOARD v. SWIFT & CO.
### No. 6996.

Circuit Court of Appeals, Seventh Circuit.
Jan. 4, 1940.

Rehearing Denied Feb. 5, 1940.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Bertram Edises, Richard C. Barrett, and Joseph B. Robison, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

E. B. Kixmiller and William N. Strack, both of Chicago, Ill., for respondent.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

In a case duly instituted and heard, the National Labor Relations Board issued an order,[1] pursuant to the provisions of Sec. 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., requiring the respondent: (1) To cease and desist (a) from dominating or interfering with the administration of Employes Protective Association, or the formation or administration of "any other labor organization" of its employees; (b) from interfering with, restraining, or coercing its employees in the exercise of the right guaranteed them by Sec. 7 of the Act. The order further required the respondent (2) to take affirmative action, viz.: (a) To refrain from recognizing the Employes Protective Association as the representative of any of its employees for the purpose of dealing with respondent concerning labor conditions and wages; (b) to post and maintain notices for 60 days that respondent will

cease and desist as set forth in 1(a) and (b) and that it will take the affirmative action set forth in 2(a); and (c) to notify the Board's Regional Director of the steps taken to comply with the order.

The proceeding before the Board was instituted by Local No. 530, United Packing House Workers Industrial Union, a labor organization. The complaint charged, inter alia, that respondent had interfered with, restrained and coerced its employees in the exercise of their right to self-organization; fostered, dominated and interfered with the formation and administration of Employes Protective Association and had given it financial and other support; and that by the foregoing acts respondent had engaged and was engaged in unfair labor practices within the meaning of Secs. 8(1) and (2) of the Act.

Respondent answered, admitting certain of the jurisdictional allegations, and denied that it had engaged in any unfair labor practices and that its operations affected commerce.

A hearing was held before a trial examiner, who filed his Intermediate Report, in which he found that respondent had fostered, dominated and interfered with the formation and administration of the Employes Protective Association, that it had given financial and other support thereto, and that it had thereby engaged in unfair practices within the meaning of Secs. 8(1) and (2) of the Act. On March 1, 1939, the Board rendered its decision setting forth its findings of fact, conclusions of law and order[2] to the effect that the respondent had dominated and interfered with the administration of the Employes Protective Association, a labor organization, and had engaged and was engaged in unfair labor practices contrary to Secs. 8(1) and (2) of the Act.[3]

The Employes Protective Association was preceded by another respondent-dominated organization, the Employes' Representation Plan.[4] The Plan was dissolved in April 1937, when the decision of the Supreme Court upholding the constitutionality of the Act made clear its illegality. National Labor Relations Board v. Jones & Laughlin Steel Co., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Thereafter, the Employes Protective Association was formed and was in turn dissolved in May

---

[1] 11 N.L.R.B. 809.
[2] 11 N.L.R.B. 809.
[3] Title 29 U.S.C.A. § 158 (1) and (2) c. 372, 49 Stat. 452.

[4] The workings of the Plan are set forth in Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87.

1938, following the trial examiner's Intermediate Report finding the Employes Protective Association respondent-controlled.

On June 22, 1939 the Board petitioned this court for enforcement of the order and respondent answered that it did not challenge the validity of any portion of the order, except 1(a) and(b). Respondent objected to 1(a) insofar as it referred to "any other labor organization," on the ground that the complaint only charged unlawful conduct in regard to the formation or administration of the Employes Protective Association. Respondent objected to 1(b) on the ground that the Board was not warranted in issuing an order which in effect enjoins any violation of Sec. 7 of the Act.

The issues in this case, therefore, are narrowed to the propriety of paragraphs 1 (a) and 1(b) of the Board's order. Respondent argues that the Board may only order the offending party to cease and desist from the unfair labor practices set forth and described in the complaint.

■ In our opinion the Board is not necessarily restricted in any case to an order which compels cessation only of the particular and limited activity found to have taken place.[5] As the remedy varies from case to case, so an order too broad in one case may be too narrow in another. In the last analysis of things, the propriety of an order depends on the facts of the case itself, and consideration is to be given to the complaint, the findings, and the character of the unlawful conduct—in short, consideration is to be given to all the facts and circumstances.

■ *Paragraph 1(a) of the order.* The Board was warranted in ordering desistance from dominating the Employes Protective Association or a similar organization. The facts show that the Plan was dissolved as soon as its illegality became apparent under the Act, and the Employes

Protective Association (also company-dominated) was dissolved as soon as the trial examiner had found against respondent. To limit the order under these facts and circumstances would permit evasion and lead to ultimate nullification of the Act. The order is proper.[6]

We believe we find additional support for our conclusion in Standard Oil Co. v. United States, 221 U.S. 1, 77, 78, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734, in which the court (in construing the permissible scope of injunctive relief in cases arising under the anti-trust Acts) held that the duty to enforce the statute often required the application of broader remedies, and in particular held that the effective remedying of the illegal acts of the company in question required an injunction forbidding the doing in the future of acts "like those which we have found to have been done in the past which would be violative of the statute."[7]

In his brief counsel for respondent placed reliance upon Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518, and New York, N. H. & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S.Ct. 272, 50 L.Ed. 515. We have read and considered those cases, but firmly believe that the applicable principles are those pronounced in the cases mentioned in footnote 5 and those mentioned above.

■ *Paragraph 1(b) of the order:* The Board was not warranted, however, in enjoining respondent from committing any act which might constitute a violation of Sec. 7 of the Act. In truth, the conduct enjoined has no fair relation to the issue which was heard and determined by the Board. The action of the Board in this respect was neither necessary nor proper under the facts and circumstances. The order is too broad.

A decree for enforcement will issue in conformity with this opinion.

---

[5] See National Labor Relations Board v. National Motor Bearing Co., 9 Cir., 105 F.2d 652; National Labor Relations Board v. Pacific Greyhound Lines, 303 U.S. 261, 265, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Pure Oil Co., 5 Cir., 103 F.2d 497, and National Labor Relations Board v. Remington Rand, 2 Cir., 94 F.2d 862, 869, certiorari denied 304 U.S. 576, 585, 58 S.Ct. 1046, 82 L.Ed. 1540.

[6] See cases f. n. 5.

[7] See, also, Local 167 v. United States, 291 U.S. 293, 299, 54 S.Ct. 396, 78 L. Ed. 804; Swift & Co. v. United States, 276 U.S. 311–328, 48 S.Ct. 311, 72 L. Ed. 587; United States v. Trans-Missouri Freight Ass'n; 166 U.S. 290, 308, 309, 17 S.Ct. 540, 41 L.Ed. 1007; Texas & N. O. R. Co. v. Brotherhood of Railway & S. S. Clerks, 281 U.S. 548, 50 S. Ct. 427, 74 L.Ed. 1034; and Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 541, 543, 544, 57 S. Ct. 592, 81 L.Ed. 789.