**UNITED STATES of America**
**and**
**O. Gordon Delk, Acting Commissioner of Internal Revenue, Petitioners,**

**v.**

**Richard GOODMAN, also known as Dick Goodman, Respondent.**

**Civ. A. No. 2311.**

United States District Court
E. D. Virginia,
Norfolk Division.

Nov. 11, 1959.

**340**

L. S. Parsons, Jr., U. S. Atty., W. Farley Powers, Jr., Asst. U. S. Atty., Norfolk, Va., F. J. Neuland, Attorney, Department of Justice, Washington, D. C., for petitioners.

Harry Spilka, Norfolk, Va., Kenneth Carroad, New York City, for respondent.

WALTER E. HOFFMAN, District Judge.

This action, filed pursuant to the provisions of § 7402(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. 7402(b), seeks to compel the respondent, Goodman, to testify in the Tax Court of the United States in response to a subpoena duces tecum issued out of that court in a proceeding instituted therein by Associated Barr Stores, Inc., against the Commissioner of Internal Revenue.

Continuously during the years 1944 to 1948 and thereafter until some date in 1950, Goodman, then a resident of Norfolk, Virginia, was employed as the manager of the Norfolk branch of Associated

Barr Stores, Inc.,[1] a corporation engaged in the retail jewelry business. Commencing the latter part of 1949 and continuing the first few months of 1950, the tax liability of Associated Barr Stores was under investigation for the taxable years 1944 to 1948, both inclusive,[2] and Goodman was interrogated by agents for the Internal Revenue Service as to certain irregularities suggested in the handling of cash sales at the Norfolk store. During the course of these investigations, the Court finds that Goodman, after being warned of his constitutional rights, voluntarily gave the agents information as to the method of handling these cash sales and the instructions given to him by his employer. This information was subsequently reduced to writing in the form of an affidavit which the Court finds that Goodman executed and swore to on January 19, 1950, in the presence of the two agents. Attached to the affidavit and made a part thereof was a photostatic copy of instructions which Goodman had stated were forwarded to him by one of the corporate officers of the Associated Barr Stores, Inc. While the details are not essentially pertinent to the present inquiry, the affidavit states in substance that Goodman was directed to take substantial cash sales and forward the cash by Railway Express to a corporate officer in Philadelphia, without making any record of such sales at Norfolk on the corporate books.

On June 22, 1953, the Commissioner of Internal Revenue notified Associated Barr Stores, Inc., of the determination of deficiencies in tax and penalty for the taxable years 1944 to 1948, both inclusive. Thereafter, on September 9, 1953, Associated Barr Stores, Inc., filed a petition in the Tax Court seeking a redetermination of the deficiencies ascertained to be due by the Commissioner.

In June, 1954, Goodman, through his Norfolk attorney, Harry Spilka, furnished the Commissioner further information, and turned over the originals of the exhibits attached to the affidavit of Jan-

1. Not to be confused with Barr Bros., Inc., an unrelated corporation.

2. The corporation operated on a fiscal year basis ending June 30.

uary 19, 1950, for use at the trial in the Tax Court, with the understanding that they be returned after additional photostats were made.

One year later, on June 13, 1955, the Tax Court conducted its hearing at Philadelphia. Associated Barr Stores, Inc., presented its evidence and rested. Counsel for the Commissioner called Goodman as the first witness. It immediately became apparent that Goodman's prior willingness to cooperate no longer existed. When questioned as to instructions received by him from one or more corporate officers with respect to the manner of handling cash sales at the Norfolk store and other facts as stated in the affidavit, Goodman refused to answer on the ground that his answers would tend to incriminate him. The presiding judge, having previously ruled that Goodman had waived his right to invoke the Fifth Amendment by giving a statement and subsequent affidavit, directed Goodman to answer, but such direction was to no avail.

As the Tax Court has no authority to enforce compliance, the proceeding was continued on motion of the Commissioner to afford the Commissioner an opportunity to take action in the District Court to compel Goodman to testify.

By order dated November 14, 1955, this Court required Goodman to appear and show cause why he should not be required to testify in the Tax Court proceedings. The initial hearing was conducted on December 2, 1955, and, since that date, the hearings have been continued at intervals; the delays being in part attributable to counsel for both the Commissioner and respondent, and in part to the congested docket of this Court.

Goodman left the employ of Associated Barr Stores, Inc., during the year 1950, but continued to reside in Norfolk until the early part of 1957.

When Goodman was initially interviewed on January 17, 1950, he admitted the existence of certain papers in his personal safe deposit box at the Seaboard Citizens National Bank which re- lated to the cash sales of the corporation. In company with the agents, the safe deposit box was opened by Goodman and certain documents were delivered to the agents. While Goodman now contends that he was acting under coercion, obviously there is no merit to such a suggestion. In the first place, Goodman's statement that he was threatened is hardly susceptible of belief when we consider his conflicting affidavits. Moreover, even if it be assumed that the agents did tell Goodman that, if the safe deposit box was not opened voluntarily, the agents would obtain an order from the federal court, this would not destroy the voluntary act. Finding as a fact that Goodman voluntarily delivered the controverted exhibits to the agents, it becomes unnecessary to consider whether said papers were the property of the corporation, or the property of Goodman personally. This disposes of respondent's contention under the Fourth Amendment, and the motion to suppress must be denied.

The documents presented by Goodman to the agents, when considered in the light of respondent's affidavit of January 19, 1950, strongly suggest fraud on the part of the corporate taxpayer, in which fraud Goodman played an active part. The instructions received from Samuel Berman and directed to Goodman state that (1) under the daily statement of business only the contract sales of merchandise, less contract sales returns and repossessions, are to be shown, (2) all cash sales and cash receipts for such cash sales, as well as cash sales tax, are to be omitted, (3) on the daily statement of cash receipts, cash sales of merchandise and the sales tax for such cash sales are to be omitted, (4) on a special report (referred to as an "A" report) the cash sales of merchandise, distribution and cash sales tax, were to be shown, but this report was to be mailed special delivery to Berman in a separate envelope, and the actual cash covering such cash sales and tax was to be placed in a package and sent by Railway Express to "S. Berman, personal."

This procedure started in September, 1943, and continued thereafter through January, 1947. Goodman, for his own reasons, maintained a record of such cash sales and sales tax thereon for each of the months in question, with the exception of seven months when no entry was made. Approximately $175,000 is the total recorded thereon. This record was among the papers delivered to the agents on January 17, 1950.

■ Such facts, assuming that a criminal act has been committed, suggest that Goodman was a party to a conspiracy to fraudulently evade and defeat the payment of income taxes. This brings us to the crucial question as to whether the statute of limitations has run to bar any prosecution against Goodman. If Goodman is protected by the statute from prosecution for any federal crime, he cannot now claim the privilege of the Fifth Amendment. If the statute has not run, or if this be a continuing conspiracy, then Goodman cannot be required to give evidence against himself in the Tax Court proceeding.

Counsel apparently agree that the applicable statute of limitations is governed by the Internal Revenue Code of 1939, 26 U.S.C. § 3748(a), which provides that no person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, except that the period of limitation shall be six years in case of fraudulent acts such as may be involved herein. The statute further provides:

"For offenses arising under section 37 of the Criminal Code, March 4, 1909, 35 Stat. 1096, where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof, the period of limitation shall also be six years. *The time during which the person committing any of the offenses above mentioned is absent from the district wherein the same is committed shall not be taken as any part of the time limited by law for the commencement of such proceedings.*"

The Internal Revenue Code of 1954, 26 U.S.C. § 6531, modified the provision respecting the tolling of the statute of limitations by eliminating the words "absent from the district" and inserting in lieu thereof the words "outside the United States or is a fugitive from justice". The statute then makes this notation in parenthesis:

"(The preceding sentence shall also be deemed an amendment to section 3748(a) of the Internal Revenue Code of 1939, and shall apply in lieu of the sentence in section 3748 (a) which relates to the time during which a person committing an offense is absent from the district wherein the same is committed, except that such amendment shall apply only if the period of limitations under section 3748 would, without the application of such amendment, expire more than 3 years after the date of enactment of this title, and except that such period shall not, with the application of this amendment, expire prior to the date which is 3 years after the date of the enactment of this title.)"

The aforesaid statute was enacted on August 16, 1954. Assuming arguendo that Goodman had not waived his privilege of self-incrimination, and that the period of limitation had not expired on June 13, 1955, when he refused to answer certain questions in the Tax Court, it is abundantly clear that Goodman may no longer be prosecuted, tried, or punished for any federal crime committed in connection with the handling of cash sales of the corporate taxpayer.

■ It is urged that Goodman may still be prosecuted for other crimes such as embezzlement. This furnishes no justification for refusing to testify in the present proceeding in the federal courts. United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210. Furthermore, assuming an embezzlement of funds by

respondent, he has not received any taxable income thereby. Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752. No such assumed embezzlement may give rise to any criminal prosecution under the internal revenue laws. Nor can it be successfully argued that, during the years in controversy, Goodman was engaged in a "certain business" (the nature of which is not disclosed) from which, he implies, he received taxable income which he did not report on his returns. Any prosecution for such acts has long since been barred.

The tax returns for the last year in controversy presumably were filed in the fall of 1948 or the spring of 1949; the corporate fiscal year ending June 30, 1948. Assuming no tolling of the period of limitation by reason of being "absent from the district", Goodman was immune from prosecution when he appeared before the Tax Court on June 13, 1955, as the six year period had then expired. There is considerable support for the view that "absent from the district" was intended to be used in the sense of one who is in some manner evading criminal process by absenting himself from his usual residence. United States v. Beard, D.C.1954, 118 F.Supp. 297, an opinion by Judge Chesnut which has received widespread approval. United States v. Jurzykowski, D.C.N.D.N.Y., 159 F.Supp. 7; United States v. Gross, D.C.Nev., 159 F.Supp. 316; United States v. Montgomery, D.C.E.D.Pa., 158 F.Supp. 267, 271. Contra: United States v. Hershenson, D.C.S.D.N.Y., 131 F.Supp. 782; United States v. Greenfield, D.C.E.D.N.Y., 131 F.Supp. 843; United States v. Satz, D.C.N.D.N.Y., 109 F.Supp. 94 (an opinion by District Judge Brennan in 1952, who later wrote Jurzykowski which followed Beard); United States v. Udell, D.C.Del., 109 F.Supp. 96.

Whatever may have been the earlier view as to the meaning of "absent from the district", the trend is toward the view expressed in Beard. Applying this principle to Goodman, the limitation period has never been tolled as to his acts. He did not reside in Philadelphia at the time of any alleged conspiracy. He lived, and continued to live, in Norfolk, Virginia, where he was properly subject to a criminal process issued out of the Eastern District of Pennsylvania. He never concealed or absented himself from Pennsylvania to avoid prosecution. Accepting this theory, the limitation period had expired prior to the Tax Court hearing but, assuming that Goodman had the legal right to refuse to testify on June 13, 1955, by reason of the divided authority on the interpretation of the words "absent from the district", this right no longer exists under the 1939 Code, the 1954 Code, or a combination of the two. Under any construction known in law, there remains no reason why Goodman should not be required to testify.

It is urged that Goodman may be indicted for participation in a continuing criminal conspiracy to violate the internal revenue laws, which conspiracy, in contemplation of law, is presumed to continue to this date. Therefore, Goodman insists, the period of limitation could not have run on a crime presumed to continue.

Mr. Justice Holmes in United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 126, 54 L.Ed. 1168, said that a conspiracy *may* be a continuing one when:

> "* * * the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation * * *"

The following year, in Hyde v. United States, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114, Mr. Justice McKenna said that if the conspiracy alleged was a continuing conspiracy, then:

> "As he [the conspirator] has started evil forces he must withdraw his support from them [other conspirators] or incur the guilt of their continuance. Until he does with-

draw there is conscious offending * * *."

Thus it is held that until the conspirator does some act to disavow or defeat the purpose, he is considered to be a continuing conspirator. Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 291 U.S. 293, 297–298, 54 S.Ct. 396, 78 L.Ed. 804.

Any such conspiracy which may have existed in this case accomplished its purpose on a year to year basis, and was not a continuing conspiracy. However, assuming arguendo that this was a continuing conspiracy, it is apparent that Goodman affirmatively withdrew from the conspiracy when his employment was terminated in the middle of 1950. His only utility to the corporate taxpayer was his ability to secretly transmit the cash sales to Berman, the corporate officer, and to perform other bookkeeping frauds in furtherance of the deception. Following the termination of his employment, he was no longer in a position to render any service to his former employer; a fact that is emphasized by his subsequent employment by a competitor of the corporate taxpayer. Under any circumstances, the statute of limitations would commence running when he and his corporate employer parted company in 1950. Thus, six years later Goodman would be immune from prosecution for a continuing conspiracy.

Respondent insists that the silence of a conspirator to avoid detection, *after* the accomplishment of the object of the conspiracy, constitutes a part of the original conspiracy so as to keep it alive. Such a contention is contrary to Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931. Even assuming a continuing conspiracy, the same rule would apply after the conspirator had disassociated himself from the participating conspiracy.

We turn, finally, to the consideration of an affidavit filed by Goodman in the present proceeding on June 14, 1956. The affidavit was marked for identification but has not been admitted in evidence. The affidavit will be treated as evidence for the purpose of this discussion. In substance, the affidavit implies that Goodman gave false information in his sworn statement of January 19, 1950, and that his 1956 affidavit is true. His assertions of embezzlement of funds and unreported income from a "certain business" are not impressive and have been previously discussed. He insists that, if now compelled to testify, he would seriously contradict much of his 1950 affidavit, and such contradictions would reflect his part in a continuing conspiracy to evade and defeat the payment of federal income taxes.

While the 1956 affidavit does not reveal the nature of the continuing conspiracy, the briefs of counsel allude to the continuing conspiracy to "cover up" the offenses which may have been accomplished by the conspiracy. In Grunewald v. United States, 353 U.S. 391, 399, 404–406, 77 S.Ct. 963, it was held that the virtual abolition of the statute of limitations cannot be accomplished in conspiracy cases merely because the conspirators take measures to cover up their crime *after* the object of the conspiracy has been accomplished. Since the conspiracy of silence *after* the accomplishment of the object of the conspiracy does *not* toll the statute of limitations, respondent cannot successfully urge this point as the period of limitation has expired.

By his 1956 affidavit, Goodman implies that he lied in his 1950 statement. Assuming this to be true, he cannot now be prosecuted for perjury committed in 1950, as the statute of limitations at that time was only three years under 18 U.S.C.A. § 3282. It is not contended —nor could it be in this proceeding— that Goodman may remain silent any longer because he may be subjected to a perjury prosecution arising out of his 1956 affidavit wherein he seeks to materially change the position and sworn statement he gave in 1950. To so hold would effectively prevent a court from ever requiring a witness to testify.

The peculiar facts of this case lead to the inescapable conclusion that the plea of privilege under the Fifth Amendment is no longer available to Goodman. As was said in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, the cases must be decided as much on the personal perception of the trial judge in viewing the surrounding circumstances of the case as upon the evidence.

Giving to the respondent the benefit of any doubt as to his claim of self-incrimination on June 13, 1955, and assuming, without deciding, that he did not waive his privilege by giving his 1950 statement, Goodman must now be required to testify in the Tax Court.

Counsel for petitioners will present an order within 15 days, after first submitting same to opposing counsel for inspection and endorsement.