UNITED STATES of America,
Plaintiff,

v.

**J. M. HUBER CORPORATION and Western Newspaper Union, Defendant.**

UNITED STATES of America,
Plaintiff,

v.

**AMERICAN SMELTING & REFINING CO., and Western Newspaper Union, Defendants.**

United States District Court
S. D. New York.
Dec. 30, 1959.

Philip L. Roache, Jr., Joseph J. O'Malley, Attys., Dept. of Justice, Washington, D. C., for the United States.

Royall, Koegel, Harris & Caskey, New York City, for defendant Western Newspaper Union. Frederick W. P. Lorenzen, Paul Kerins, David F. Dobbins, New York City, of counsel.

DIMOCK, District Judge.

Motions to Dismiss Indictments.

Defendant, Western Newspaper Union, hereinafter WNU, moves to dismiss the indictment in each one of these cases.

The only other defendants, J. M. Huber Corporation, in Cr. 159–149, and American Smelting & Refining Co., in Cr. 159–150, have pleaded nolo contendere, so that in each case the only remaining defendant is WNU.

Each indictment charges "an unlawful combination and conspiracy in restraint of * * * interstate trade and commerce in violation of section 1 of the Act of Congress of July 2, 1890, entitled 'An Act to Protect Trade and Commerce Against Unlawful Restraints and Monopolies,' as amended, 26 Stat. 209, 15 U.S.C. Section 1, commonly known as the Sherman Act."

The motions to dismiss are based upon the existence of a consent decree in the case of United States of America v. Western Newspaper Union, et al., Civil No. 87–60, entered in this court on August 18, 1953. The worst that WNU can say about the indictments is a claim that the Government is now bringing criminal proceedings in which it seeks to convict WNU of a crime where the issue is the same as that determined adversely to WNU by the consent decree. It is doubtful whether this claim that the issue is the same as one determined by the consent decree can be supported but WNU argues that, under certain circumstances, the consent decree would constitute a bar even if the issues were not precisely the same as those created by the indictment. Since my conclusion is that even were the issues precisely the same the consent decree would not be a bar to criminal prosecution, I need consider no other question.

The Sherman Act plainly contemplates concurrent civil and criminal proceedings based upon the same state of facts. Section 1 makes contracts, combinations or conspiracies in restraint of trade misdemeanors and provides for their punishment. Section 2 makes monopolies and attempts to monopolize and combinations and conspiracies to monopolize misdemeanors and provides for their punishment. Section 4 provides for such civil proceedings as those in which the consent decree was entered.

It gives jurisdiction to the District Courts to prevent and restrain violations of sections 1–7, and makes it the duty of the several United States Attorneys in their respective districts under the direction of the Attorney General to institute proceedings in equity to prevent and restrain such violations. The Act bears no indication that Congress intended the civil and criminal remedies to be alternatives. Indeed, on the face of the Act, it appears that the remedies are complementary. No reason is suggested why conduct, which has been proved to violate the statute and thus merit an injunction against it, should by virtue of that injunction be absolved from criminal consequences despite the Government's ability to prove it by the requisite degree of proof for a criminal conviction.

In what I have just said, I have dealt with the ordinary decree entered after trial. Certainly a consent decree such as that here relied upon as a bar would have no more or less conclusive effect.

▇ This is evidently a case of first impression. It is settled that an existing judgment in a criminal case does not prevent the bringing of a subsequent civil case by the Government. See, as to a judgment of acquittal, United States v. National Ass'n of Real Estate Boards, 339 U.S. 485, 493–494, 70 S.Ct. 711, 94 L.Ed. 1007, and, as to conviction, Local 167 of International Brotherhood, etc. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804, and United States v. National City Lines, D.C.N.D.Ill., 118 F.Supp. 465. The Government need not rely upon the threat of a second criminal prosecution as a deterrent but may ask the court for an injunction forbidding future violations. No reason is perceived why, when an injunction forbidding future violations has been obtained, the Government should not be allowed to press for punishment for past violations.

Defendant argues that the consent decree here involved by its terms prevents criminal prosecution. For this it relies on a provision of the consent decree that it shall not operate as a bar or estoppel against any suit or proceeding based upon any acquisition by any defendant of any of the capital stock, physical assets, business or good will of any person engaged in the manufacture, sale or distribution of printing supplies, printing machinery or printers' services. Defendant argues that the injunctive provisions of the consent decree deal solely with price fixing and that the subject matter of the indictment is similarly confined. He says that, by the express reservation of the Government's rights to bring proceedings based upon acquisition of competing interests, there is a negative implication that the Government may not bring a proceeding based upon price fixing. Passing the question of the propriety of an agreement by the Government not to prosecute for crime, the provision under consideration is not susceptible of that construction. The consent decree provides:

"Now, therefore, before any testimony has been taken herein, and without trial or adjudication of any issue of fact or law herein, and upon consent of all parties hereto, it is hereby

"Ordered, adjudged and decreed, as follows:"

The only conclusions in the judgment are that the court has jurisdiction of the subject matter and of the parties and that the complaint states a cause of action against the defendants under section 2 of the Sherman Act. All of the other provisions are merely injunctive or disclaimers. A decree which disclaims any adjudication except that the court has jurisdiction of the controversy and of the parties and that the complaint states a cause of action under section 2 of the Sherman Act is so far from operating as a bar or estoppel that a disclaimer of that effect as against any suit or proceeding based upon an acquisition of competing business interests must be regarded as no more than the result of an excess of caution. I have concluded above that under the statute the Govern-

ment may, upon a basis of the same conduct in each case, obtain an injunction and after the injunction has been obtained institute a proceeding by indictment. The question now raised is whether this court in the consent decree by implication prohibited the institution of such criminal proceedings. The circumstances are simply too weak to support the implication of an injunction against the Government in a decree enjoining defendants. The motions to dismiss the indictments are denied.

### Motions for Bills of Particulars.

Defendant moves also for bills of particulars. The indictments in each case are substantially identical except that the indictment in No. 159–149 charges a combination by WNU with J. M. Huber Corporation in connection with the sale of ink and the indictment in No. 159–150 charges a combination of WNU with American Smelting & Refining Company in connection with the sale of typemetal. WNU is alleged to be in the business of selling both ink and typemetals. Since the indictments are substantially identical, mutatis mutandis, the demands for particulars are substantially identical except that the demand in the case involving the American Smelting & Refining Company seeks particulars in one respect not covered by the other demand. I shall therefore deal with the demand in that case, No. 159–150.

The Government strenuously opposes most of the requests. The principal ground of opposition is one which long ago ought to have been laid at rest. I quote an example: "It seems too obvious for argument that a conspirator knows with whom he conspires." I can do no better than to repeat the comment made by the then District Judge Whittaker in United States v. Smith, D.C.W.D.Mo., 16 F.R.D. 372, 375:

"Nor is it any answer to a motion for a bill of particulars for the government to say: 'The defendant knows what he did, and, therefore, has all the information necessary.' This argument could be valid only if the defendant be *presumed to be guilty*. * * * Being presumed to be innocent, it must be assumed 'that he is ignorant of the facts on which the pleader founds his charges.' "

It must never be forgotten that what is sought by a bill of particulars is not what actually happened but what the opponent claims happened.

Another objection urged throughout by the Government is that to furnish the particulars requested would involve a disclosure of the Government's case. It is true that, in the average criminal case where a defendant is fighting for his life or liberty against the charge that he has committed some crime of violence, to disclose the Government's case in advance might make it too easy for the defendant to concoct an alibi or a fictitious defense. That consideration, however, is rarely present in the normal antitrust case. The question is usually one as to the inferences to be drawn from conceded facts. Complicated matters like economic theories are more likely to be under consideration than the simple matter of whether the defendant was the man who struck the blow. The expense in time and money of antitrust cases has been a byword and from all sides the courts are being urged to simplify them. In the case at bar the Government has had access to all of the defendants' files in the course of the civil litigation that ended in the consent decree. There is no reason in the world why the Government should not with precision state exactly what it charges constituted the crime for which it now prosecutes the defendants. That is not to say that the rule against the requirement of the disclosure of the Government's evidence should be abandoned in this or in any other case nor is it to say that the courts should fashion a practice under which the defendant in a criminal case may demand that the Government answer interrogatories. Insofar, however, as matters are alleged in the indictment in general terms, those general terms must be reduced to specifics with precision and completeness.

With those general observations, I shall proceed to details.

What I have said leads to my granting of particulars in response to requests A(1) and A(3). Request A(2) deals only with the point which I have already resolved against defendant that it may not be prosecuted criminally for an offense which has been the basis of its consent to a decree against it. Accordingly the request is denied.

Paragraph 11 in the indictment reads as follows:

"11. The aforesaid combination and conspiracy has consisted of a continuing agreement and concert of action between ASARCO, WNU, and other persons to the grand jury unknown, the substantial terms of which have been and are that they agree to fix, maintain and stabilize the selling prices at which typemetals are sold to ultimate consumers or users."

Request B(1) asks for the identity of those claimed to have performed acts "pursuant to the continuing agreement and concert of action" et cetera. This is certainly too broad and is disapproved. Defendant is being prosecuted for engaging in a combination and conspiracy, not for making sales pursuant to such a combination and conspiracy. The combination and conspiracy might be proved by evidence of acts attributable thereto but still the gist of the charge would be the combination and conspiracy. To require a statement of every act done which the Government claims was performed pursuant thereto might require the specification of thousands of orders for small amounts of typemetals.

Requests B(2) and B(3) seek the usual details which would be required under the old practice in civil cases with respect to an agreement, i. e., whether express or implied, whether in writing or oral, if in writing, a copy thereof, and if oral, the substance thereof, by whom and to whom spoken and the time and place of the conversation. Request B(4) asks for the substance of the continuing agreement insofar as it was claimed to be implied. Requests B(2), B(3) and this part of B(4) should be complied with and the answers given with particularity and detail. Indeed, if these requests are answered with particularity and detail, there will be no need to answer the succeeding requests numbers B(6), B(7), B(8), B(10) and B(12) and those requests are therefore denied not because they are improper but because to answer them would require a repetition of the material furnished pursuant to requests B(2), B(3), and part of B(4).

The last part of the request B(4) asks for the identity of the acts or documents from which the supposed implied continuing agreement is implied and asks the names of the persons who performed the acts and the dates of the occurrences. That seems to me a mere request for evidence. It seeks the circumstantial evidence from which the Government says that the continuing agreement should be implied. It need not be answered.

Request B(5) asks with respect to "concert of action" the same particulars as asked in the first part of B(4) above with respect to "continuing agreement". If anything different is meant by the two expressions the request is proper.

Request B(9) would be proper except for the fact that it asks some details which will have been furnished pursuant to demands such as numbers B(2), B(3) and B(4). Therefore request B(9) is allowed only to the extent of requiring a statement of the time period in which the alleged continuing agreement and concert of action were operative in each geographical area.

Request B(11) does not seek an amplification of anything alleged in the indictment but is rather a substitute for the interrogatory practice which does not obtain in criminal cases and it is denied.

Paragraph 13 of the indictment states the alleged effects of the combination and conspiracy. It states as such an effect that the prices at which typemetals are sold to ultimate consumers or users have been fixed and competition between

the defendants has been suppressed and eliminated. Request C(1) begins by asking whether competition was suppressed by the establishment of uniform prices in any geographical area and, if so, it asks the Government to specify each such area, price and the time during which such price was in effect. Since the Government has chosen to allege this effect in the indictment, it must be assumed that it expects to prove the allegation. The allegation thus assumes importance and the requests in the first two sentences of C(1) are no more than those which will give an identifying description of the effects alleged and are therefore allowed. The balance of C(1), however, asks for matters which will be furnished under such requests as B(2), B(3) and B(4), or else seeks matters which could only be obtained by the non-permissible interrogatory method and need not be answered.

Requests C(2) and C(3) ask for details as to matters alleged in the indictments to which the defendant is entitled.

One of the allegations of paragraph 13 is subdivision (c) which says that one of the effects of the combination and conspiracy was that purchasers, ultimate consumers and users of typemetals have been denied the opportunity to purchase typemetals in a free and competitive market. In request C(4) defendant asks for a statement of each instance in which purchasers or ultimate consumers and users of ink have been denied such an opportunity. The indictment's allegation was an allegation only of a general condition. To ask for each manifestation of that general condition is absurd.

Paragraph 13 of the indictment states that it lists various restraints as effects of the combination and conspiracy "among others". Request C(5) asks whether there have been other restraints than those listed in paragraph 13 and, if so, asks a statement of the way in which they did restrain trade and commerce. As I have said, the allegation of the effects of the combination and conspiracy is an unnecessary one. Thus the use of the words "among others" does not indicate to me that the Government intends to offer evidence of effects other than the general ones alleged but rather that the Government does not wish to be understood as alleging that the listed effects were the only ones. Request C(5) need not be answered.

Paragraph 14 of the indictment alleges facts with respect to jurisdiction and venue. This is an important matter and defendant is entitled to have the particulars with respect to the connection of the acts charged with the Southern District of New York. The information required by request D(1) must be furnished.

Request D(2) is "State what illegal acts are claimed to have been committed by the defendants in the Southern District of New York and give the date of each such act". To answer such a broad request might lead far afield of anything which would be the subject of evidence so that the request should be amended and answer given to it in the amended form: "State the illegal acts committed by the defendants in the Southern District of New York as to which the Government will offer evidence and give the date of each such act."

In accordance with defendant's motions the court directs that, as to any items among the requests concerning which the Government shall state in its bill of particulars that its knowledge or information is incomplete, the Government shall set forth in its bill of particulars whatever knowledge or information it may have and shall furnish further particulars within ten days after it shall have obtained further knowledge or information and, in any event, not later than thirty days before the trial.

Settle order on notice.