**Kline S. PROUD, Doing business as Streator Air Service, Petitioner-Appellant,**

**v.**

**CIVIL AERONAUTICS BOARD, and William F. McKee, Administrator of the Federal Aviation Agency, Respondents-Appellees.**

**No. 15193.**

United States Court of Appeals Seventh Circuit.

Feb. 15, 1966.

Charles M. Holleb, Jr., Chicago, Ill., for petitioner.

Lionel Kestenbaum, Asst. Atty. Gen., Dept. of Justice, Matthew Z. Markotic, John H. Wanner, Peter B. Schwarzkopf, O. D. Ozment, C.A.B., Joseph B. Goldman, Deputy Gen. Counsel, Tyll van Geel, Burton S. Kolko, Morton Bobowick, Attys., C.A.B., Fritz L. Puls, Associate Gen. Counsel, Enforcement Division, Donald F. Turner, Asst. Atty. Gen., Nathaniel H. Goodrich, Gen. Counsel, Federal Aviation Agency, Washington, D. C., for respondents.

Before SCHNACKENBERG, SWYGERT, and MAJOR, Circuit Judges.

SWYGERT, Circuit Judge.

Kline S. Proud petitions for review of an order of the Civil Aeronautics Board revoking his inspection authorization rating, a separate part of his air-

plane mechanic's certificate granted by the Federal Aviation Agency.[1]

On September 12, 1963, at Streator, Illinois, the petitioner performed a periodic inspection on a certain aircraft,[2] certified it as airworthy, and returned it to service. Seven days later the aircraft crashed, killing its owner. An investigation by the FAA disclosed that the trim tab had not been properly attached to the right rudder-elevator prior to the crash.[3] The FAA conducted a hearing and ordered the revocation of the petitioner's inspection authorization rating. An appeal was taken to the CAB pursuant to section 609 of the Federal Aviation Act, 49 U.S.C. § 1429. The Administrator of the FAA filed a complaint, as required by the rules of the Board.

The Board thereafter conducted a hearing de novo at which the Administrator produced the only evidence. The right rudder-elevator and trim tab from the aircraft were introduced. The rudder-elevator has twenty-five hinge segments protruding from it, the trim tab twenty-six. Together they form a piano type hinge. The hinge segments, when properly secured, are attached by a piano wire which runs inside each of the twenty-six hinge segments of the trim tab and is alternately laced inside the odd-numbered hinge segments of the rudder-elevator and outside the even-numbered segments. Thus there are thirteen points at which the trim tab is normally attached to the rudder-elevator. When found at the scene of the crash, however, approximately twenty-five yards from the trim tab, the rudder-elevator involved here had only one torn hinge segment at one end and two torn segments at the other end, while the piano wire was intact inside the hinge segments of the trim tab.

A FAA inspector testified that since none of the remaining hinge segments on

1. The Board consented to a stay of its order of revocation pending the disposition of this appeal.

2. Beechcraft Model B-35, N-5163C.

3. The aircraft in question has a "V" shaped tail, the control surface of which is re-

ferred to as a rudder-elevator. The trim tab, a flap attached to the trailing edge of this control surface, permits adjustment of flight attitude to compensate for differences in load.

the rudder-elevator were torn, the trim tab could not have been properly attached prior to the crash. He testified that this condition could not have occurred by the mere operation of the aircraft for a seven-day period and that the condition could only have resulted from a manual assembly or disassembly. The last entry in the log book of the aircraft was the petitioner's certification of airworthiness dated seven days prior to the accident. The inspector also testified that compliance with the inspection procedure established by the civil air regulations would have visually disclosed the improper condition.

The petitioner offered no evidence even though the Board's hearing examiner indicated that his decision would be adverse if the petitioner failed to do so. The examiner found that the petitioner had violated certain civil air regulations by making an improper inspection and ordered revocation of his inspection authorization rating. The Board reviewed the examiner's decision only to the extent of discussing and approving the sanction imposed.

The essential charge against the petitioner was that he certified as airworthy and returned to service an aircraft which was unairworthy. The petitioner contends that this charge was not proved. He argues that while the evidence established an improper attachment of the rudder-elevator and trim tab at the time of the crash on September 19, no evidence was introduced to show that this condition existed on September 12, the date of petitioner's inspection and certification. The petitioner contends that without any direct evidence of a failure to properly perform the inspection it was incumbent upon the Administrator to prove every link in the causative chain extending back to September 12. He urges that all possibilities that the condition originated subsequent to his certification should have been affirmatively excluded.

We have determined, however, that the Administrator's charge was sustained by the evidence of the particular condition existing on September 19 and the inference reasonably drawn therefrom. The evidence showed that the improper assembly, the misrouted piano wire, existed prior to the crash. If the piano wire had been properly laced at the time of the crash, either the wire would not have remained intact in the trim tab when the trim tab separated from the rudder-elevator, or the hinge segments in the rudder-elevator through which the wire should have been routed would have been torn. Next, the improper condition was shown to be of a continuing nature. The FAA inspector stated that the relationship of the parts which must have existed prior to the crash could only result from manual or mechanical disassembly and reassembly. This fact created a strong inference that the improper trim tab and rudder-elevator assembly existed when the petitioner inspected the aircraft. The possibility of malicious tampering during the seven-day period was present, of course, but a presumption of such an illegal act may not be entertained. The Administrator is not required to exclude every conceivable possibility of an intervening cause. Similarly, the unlikelihood of a disassembly and reassembly or of another authorized inspection during the seven days in question is strengthened by the absence of an entry in the log book of the aircraft, an exercise which the civil air regulations require and which presumably would have been performed had either event occurred.

The Administrator established a prima facie case by proving the existence of a subsequent improper condition of a continuing nature. Under such circumstances, the petitioner was obliged to offer evidence in rebuttal. But the petitioner introduced no evidence; he did not even testify in his own behalf. Since the proceeding before the CAB was a civil proceeding, the petitioner's failure to testify justified a further inference that his testimony would have been unfavorable to him. Local 167, etc. v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804 (1934); Daniel v. United

States, 234 F.2d 102, 106 (5th Cir. 1956), cert. denied, 352 U.S. 971, 77 S.Ct. 362, 1 L.Ed.2d 324 (1957). The Administrator's burden of proof was sustained by substantial evidence, even though circumstantial.

The petitioner relies principally upon Administrator v. Rawdon, 34 C.A.B. 862 (1961), and Administrator v. Strom, 29 C.A.B. 1511 (1959), for his contention that an inference of a faulty condition existing on September 12 could not be drawn from proof of a faulty condition existing on September 19. These decisions indicate only that an inference of a prior condition from proof of a subsequent condition is not sufficient to sustain a charge where evidence has been introduced which in some manner rebuts the inference. Here no evidence was introduced before the Board tending to show that some intervening event occurred after September 12 which might reasonably have caused the improper condition of the rudder-elevator and trim tab assembly found on September 19.

 The petitioner next argues that the Board failed to make a specific finding that the aircraft inspected by him was unairworthy at the time of his inspection. He contends that the absence of such a finding renders the Board's decision so unclear as to constitute reversible error. We think, however, that a finding of unairworthiness is inherent in the Board's finding that petitioner's certification of airworthiness was such a "very serious oversight of the aircraft's condition at the time he inspected it" and exhibited such a "lack of * * * care, judgment and responsibility" as to require a revocation of his inspection authorization.

The petitioner also takes issue with the Board's finding that he lacks qualification to hold an inspection authorization rating. The petitioner apparently believes that his qualifications were not challenged in any manner and that therefore the Board could not find him unqualified. This contention is without merit. The conclusion that the petitioner overlooked a serious flaw in the tail assembly of an aircraft during the course of his inspection in violation of the civil air regulations challenges his qualification to exercise the care and responsibility demanded of one holding an inspection authorization rating. Specht v. CAB, 254 F.2d 905, 916 (8th Cir. 1958).

The Board's lack-of-qualification finding is the standard it employs in determining when revocation, as opposed to suspension, is appropriate to insure "safety in air commerce * * * and the public interest." 49 U.S.C. § 1429. The Board, in turn, is normally given discretion in choosing the proper remedy. Hard v. CAB, 248 F.2d 761, 763 (7th Cir. 1957), cert. denied, 355 U.S. 960, 78 S.Ct. 543, 2 L.Ed.2d 534 (1958). The record supports the Board's finding of lack of qualification and reveals no abuse of discretion with respect to the sanction imposed.[4]

The order of the Board is affirmed.

---

4. The petitioner's mechanic's certificate is not otherwise affected by the revocation of his inspection authorization rating. Further, the Administator has stated that the petitioner will be eligible to reapply for an inspection authorization rating at the end of one year.