**Ronald H. GLANTZ and Anthony J. Bucci, Plaintiffs, Appellants,**

v.

**UNITED STATES of America, et al., Defendants, Appellees.**

No. 87–1393.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1987.

Decided Jan. 20, 1988.

Anthony J. Bucci, Jr., with whom Bucci Law Offices was on brief, for plaintiffs, appellants.

Richard A. Olderman, Appellate Staff, Civil Div., Dept. of Justice, with whom Barbara L. Herwig, Appellate Staff, Civil Div., Dept of Justice, Richard K. Willard, Asst. Atty. Gen., and Lincoln Almond, U.S. Atty., were on brief, for defendants, appellees.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

Appellants Ronald H. Glantz and Anthony J. Bucci appeal from a summary judgment dismissal of their 42 U.S.C. §§ 1985(2) and 1986 actions[1] against various govern-

1. 42 U.S.C. § 1985(2) provides:

**Obstructing justice; intimidating party, witness, or juror**

ment officials and one private individual for failure to state a claim thereunder.[2] In the district court, the defendants moved to dismiss or for summary judgment on five grounds: (1) that the court lacked *in personam* jurisdiction over the defendants Caldwell, Lawless, Kohlar, and O'Connor; (2) insufficient service of process as to all defendants except Caldwell and Notarantonio; (3) failure to state a claim under 42 U.S.C. §§ 1985(2) and 1986; (4) collateral estoppel; (5) lack of standing to assert claims for injunctive relief. The district court found there was *in personam* jurisdiction over all defendants. We have not considered this issue at all and intimate no opinion on it.

Since we find that this case is barred by the doctrine of collateral estoppel, also known as issue preclusion, an examination of the pleadings in this case in light of the issues decided in its precursor, *United States v. Bucci and Glantz*, 839 F.2d 825 (1st Cir. 1988), is necessary.

In *United States v. Bucci and Glantz*, we upheld jury convictions against the present plaintiffs of conspiracy to commit extortion and extortion in violation of the Hobbs Act. All of the counts stemmed directly from the extortion by them of kickback payments from James Notarantonio, the one private defendant in this suit. The payments were made from the proceeds of a contract Notarantonio had received, with the assistance of Glantz and Bucci, from the City of Providence, Rhode Island. Notarantonio was the principal witness for the government at the trial.

The complaint in the instant case alleges in pertinent part: The convictions resulted from the perjured testimony of Notarantonio which was procured by the defendants who conspired to secure the testimony "by threats, and/or promises, inducements, and rewards directed at Notarantonio." One of the threats involved the collection of a $20,000 fine assessed against Notarantonio after he had been found guilty in a criminal case. The United States Attorney told Notarantonio that he would seek to collect the fine unless Notarantonio testified falsely that Glantz and Bucci had accepted bribes in connection with the contract awarded Notarantonio. The United States Attorney and his assistants, DiGoia and Caldwell, falsely represented to the district court during the criminal trial that the government would with "celerity and dispatch"

---

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impending, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1986 provides in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

2. The named defendants were: Lincoln C. Almond, individually and as United States Attorney for the District of Rhode Island; Anthony DiGoia, individually and as Assistant United States Attorney for the District of Rhode Island; Christopher Caldwell, individually and as an attorney for the United States Department of Justice, Public Integrity Section; Joseph Lawless, individually and as attorney for the United States Department of Justice, Public Integrity Section; John Kohlar, individually and as an attorney of the United States, Department of Justice, Civil Division; Jeffrey Lampinski, individually and as a Special Agent of the Federal Bureau of Investigation; Michael O'Connor, individually and as a Special Agent of the Federal Bureau of Investigation; John Fahey, individually and as a Special Agent of the Internal Revenue Service; and James A. Notarantonio.

move to collect the fine, but this has not been done. On September 10, 1985, defendant John Kohlar, an attorney in the Civil Division of the Justice Department, settled claims by the United States against Notarantonio totalling several millions of dollars for $198,100. This settlement was made to induce Notarantonio to testify falsely before the grand jury and in the criminal trial. During the trial, the United States Attorney and his assistants, DiGoia and Caldwell, became aware that Notarantonio had failed to report income in excess of $125,000 for the years 1979 and 1980. No attempt was made to collect the tax due and the statute of limitations on this debt "will expire within the next few months." Defendant Fahey, a special agent of the Internal Revenue Service, "threatened Notarantonio that unless he gave false testimony against Plaintiffs, he would proceed to collect the amount due the Internal Revenue Service."

The principle that collateral estoppel precludes raising issues in a civil case already decided in a prior criminal trial has been long established.

> It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding. *United States v. Greater New York Live Poultry Chamber of Commerce*, 53 F.2d 518 (S.D.N.Y.1931), affirmed *sub nom. Local 167 v. United States*, 291 U.S. 293 [54 S.Ct. 396, 78 L.Ed. 804] (1934); *Farley v. Patterson*, 166 App.Div. 358, 152 N.Y.Supp. 59 (1915); *see State v. Intoxicating Liquor (Adams)*, 72 Vt. 253, 47 A. 779 (1900); 2 Freeman, Judgments (5th ed. 1925), § 657. Such estoppel extends only to questions "distinctly put in issue and directly determined" in the criminal prosecution. *See Frank v. Mangum, supra,* [237 U.S. 309] at 334 [35 S.Ct. 582, 590, 92 L.Ed. 180 (1915)]; *United States v. Meyerson*, 24 F.2d 855, 856 (S.D.N.Y. 1928). In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment. *Cf. Commonwealth v. Evans*, 101 Mass. 25 (1869).

*Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). *See also Kennedy, Attorney General v. Mendoza-Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963). It is also beyond doubt that issue preclusion applies to a federal civil rights action following a criminal conviction in a state court. *Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980). The same reasoning applies with even more force to a prior federal criminal conviction.

The question, therefore, is whether the allegations raised in the complaint were determined in the antecedent criminal case. In that trial, Notarantonio was the principal government witness. His credibility was, perforce, one of the basic issues. Our reading of the criminal trial transcript of Notarantonio's testimony reveals that he was cross-examined about the collection of the $20,000 fine, an SBA loan and settlement of it, and his income tax status. These are the factual bases for the complaint's allegations of perjury by Notarantonio and subornation of perjury by the defendants. The remarks of the district court in ruling on the motions of Glantz and Bucci for a new trial reinforce our conclusion that Notarantonio's credibility and the subsidiary issues, now raised in the civil rights complaint, were decided adversely to Glantz and Bucci by the jury:

> The defense makes much of the factors affecting the credibility of Notarantonio, unquestionably the government's key witness: his criminal record and promises and rewards offered by the United States. By the government's own admission, Notarantonio received substantial inducements in return for his testimony. There was also disputed testimony that he received financial incentives to testify, including deferral of collection on monies owed the IRS and a promise not to collect funds due on a civil judgment.

> This Court is acutely aware of the factors affecting Notarantonio's credibility. This issue was fully, fairly, and extensively presented to the jury, through

cross-examination of Notarantonio and other government witnesses, direct examination of defense witnesses, and arguments of defense counsel. After considering all this evidence, the jury determined that Notarantonio's inculpatory evidence deserved to be credited.

*Cardillo v. Zyla,* 486 F.2d 473 (1st Cir. 1973), is directly on point. Cardillo brought a civil action for damages against various individuals who, he alleged, gave or induced others to give perjured testimony that resulted in his conviction. We held:

> Cardillo's civil damages claims are therefore inseparable from the issues at the heart of the criminal prosecution: Zyla's and Jacobsen's credibility, the good faith of Zyla's sons and of Inspector Smith. To litigate them would inevitably be to relitigate to greater or lesser degree the nine-day criminal trial held in 1971. This Cardillo may not do while the criminal judgment remains unreversed or unvacated by the proper tribunal. *Edwards v. Vasel,* 469 F.2d 338 (8th Cir. 1972).

*Id.* at 475 (footnote omitted).

So here, the plaintiffs cannot relitigate the issue of Notarantonio's credibility. Since Notarantonio was the chief witness for the government, the jury must have credited his testimony. The transcript of the criminal trial shows a well-mounted attack on Notarantonio's credibility aimed at persuading the jury that he was lying because of government rewards, threats, promises, and inducements. The jury decided otherwise and that finding precludes another trial on the issue.

*Affirmed.*